COMM'RS OF JEFFERSON COUNTY v. J. B. McCLEARY.

SALARY OF COUNTY SUPERINTENDENTS; *Incorporated Cities.* The amount of the salary of each county superintendent of public instruction is to be determined from the number of children of school ages within his county; but all incorporated cities, including cities of the third class, are to be excluded in taking the enumeration of the school children for such a purpose.

*Error from Jefferson District Court.*

McCLEARY, plaintiff in the court below, presented to the county board of Jefferson county his claim for balance of

salary, claimed to be due as county superintendent, to the amount of four hundred dollars, which claim was disallowed by the county board, from whose decision he appealed to the district court. The county board claimed that *McCleary* was entitled to only $1,200 per year, and had been paid in full at that rate. He claimed $1,500, and this action was for the difference between these sums for sixteen months. The question was, whether children of school ages residing in cities of the third class were to be included or excluded in taking the enumeration for the purpose of fixing the salary. The district court held they were to be *included*, and at the May Term 1873 gave judgment in favor of *McCleary*. The *Board of County Commissioners* bring the case here on error.

*Henry Keeler*, county attorney, for plaintiff in error.

*J. B. Johnson*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: Counsel for defendant in error, plaintiff below, says that "there are but two questions in this case: First, What salary is the county superintendent of public instruction entitled to in Jefferson county from September 1st, 1871, to January 1st, 1873? Second, Was the claim presented by defendant in error to the county board 'for all his dues in full,' and if so can the verbal agreement of plaintiff and defendant that it should not be in full be offered in evidence?"

I. The defendant in error was county superintendent of public instruction for Jefferson county from September 1st, 1871, to January 1st, 1873, and for that time the county board paid him as salary $1,600, or at the rate of $1,200 per annum. The county board claims that this was all that the defendant in error was entitled to receive, but he claims that he was entitled to receive a salary at the rate of $1,500 per annum. The statute provides that "county superintendents of public instruction of counties reporting three thousand and less than five thousand children over the age of five and

under the age of twenty-one years, shall receive a salary of twelve hundred dollars per annum; and county superintendents of public instruction of counties reporting five thousand children and over, of school ages, shall receive a salary of fifteen hundred dollars per annum: *Provided*, That in the above enumeration incorporated cities shall be excluded." (Laws of 1869, page 174.) It seems to be admitted that under the above proviso cities of the first class and cities of the second class are to be excluded from the enumeration in determining the salaries of county superintendents; but it is claimed that cities of the third class are not to be so excluded. The reasons for this claim seem to be as follows: 1st, There were no cities of the third class when the act fixing the salaries for county superintendents was passed and took effect. 2d, When cities of the third class were organized they still remained under the superintendency of county superintendents. If cities of the third class are to be excluded from said enumeration, then the defendant in error is entitled to receive only $1,200 salary per annum; but if such cities are to be included in the enumeration, then he is entitled to receive $1,500 salary per annum. We think they are to be excluded. The salary-act provides that all "incorporated cities shall be excluded." Now cities of the third class are unquestionably "incorporated cities." They are as much so as any other class of cities. They are not only so by virtue of the powers, privileges, franchises and immunities granted to them, but they are so by virtue of positive and specific enactment. The act incorporating them provides that "each city governed by the provisions of this act shall be a body corporate and politic." (Laws of 1869, p. 80, § 4; Laws of 1871, p. 122, § 13.) The first act incorporating cities of the third class was passed by the same legislature that passed the act fixing the salaries of county superintendents; and it was passed three days earlier. Hence the legislature must have known at the time they passed the act fixing the salaries of county superintendents that "incorporated cities" of the third class would soon come into existence.

And hence, as they used language in said proviso broad enough to exclude all incorporated cities, they must have intended to exclude cities of the third class as well as other cities from said enumeration. It can hardly be supposed that the legislature, when they used said language excluding all incorporated cities had forgotten what they had done only three days before that time. We suppose it will hardly be urged seriously that said proviso had relation to such cities only as were in existence at the time when the act in which said proviso is found was passed; for if such construction should be put upon said proviso, then all cities of the second class organized since the passage of said act would have to be included in the enumeration in determining the amount of the salary of county superintendents. Besides, upon general principles of construction said proviso could not be so construed. It does not purport to have been passed for the present only. Its operation is not limited by the language in which it is couched to things as they existed at the time of its passage. On the contrary it was clearly enacted for the future. It was clearly intended to operate upon things as they should exist when its operation could be called practically into effect. And laws are generally passed for a future state of things, and not for the present merely. If the salaries of the county superintendents of some of the western counties of this state were to be determined by the number of school children within their respective counties at the time said act was passed, instead of at the present time, their salaries would certainly not be very large. But such a construction cannot be put upon said act.

We suppose it is hardly necessary to consider the other question raised in this case. The defendant in error having been paid in full for his services as county superintendent, we suppose it will make but little difference whether he and the county board had a verbal understanding or not that he was not paid in full.

The judgment of the court below is reversed, and cause remanded for further proceedings.

All the Justices concurring.